IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


DEAN EUGENE GAMBLE, SR.

      Petitioner,

v.                          Case No. 2:10-cv-00690

ADRIAN HOKE, Warden,
Huttonsville Correctional Center,

      Respondent.


## PROPOSED FINDINGS AND RECOMMENDATION

On April 28, 2010, the Clerk's Office received a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1), filed by Dean Eugene Gamble, Sr. (hereinafter "Petitioner"). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY OF PETITIONER'S CASE

Petitioner was convicted by a jury in the Circuit Court of Fayette County, West Virginia, of conspiracy to deliver and delivery of cocaine. State v. Gamble, Case No. 07-F-10 (Cir. Ct. Fayette Cty., Apr. 9, 2007); ECF No. 29, Ex. 1. Petitioner pled guilty to being a recidivist, which increased his sentence for the delivery charge from 1-15 years to 2-15 years. State v. Gamble,

Case No. 07-F-46 (Cir. Ct. Fayette Cty., May 24, 2007); ECF No. 29, Ex. 3. On May 24, 2007, Petitioner was sentenced to 1-5 years on the conspiracy count, to run consecutively to a term of 2-15 years on the delivery count, for a total of 3-20 years in prison. Gamble, Case No. 07-F-10 (May 29, 2007); ECF No. 29, Ex. 5.

On March 27, 2008, the Circuit Court granted a motion to re-sentence Petitioner, solely for the purpose of re-starting the appeal period. ECF No. 1, Attachment 3, at 9-10. On July 25, 2008, Petitioner filed a Petition for Appeal in the Supreme Court of Appeals of West Virginia (the "SCAWV"), in which he raised two grounds for relief:

1. The trial court erred when it allowed Officer Dunn to testify, over defense counsel's objection, that the reason Mr. Gamble was not used as an informant by Trident was because he had an active warrant for failure to register as a sex offender at the time he had applied. Thereby, exposing jurors to evidence which was not relevant to the case, was highly inflammatory and prejudicial, and constituted improper use of 404(b) evidence.

2. The trial court erred in denying Mr. Gamble's Motion to Dismiss the Delivery of a Controlled Substance Count (Count Two) on double jeopardy ground[s] because, under the facts of this case, the elements of delivery of a controlled substance are included within the elements of conspiracy to deliver a controlled substance.

ECF No. 29, Ex. 7. The SCAWV refused the Petition for Appeal on January 30, 2009. Id.

On March 13, 2009, Petitioner filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Fayette County. Gamble v.

2

Waid, Case No. 09-C-119-H (Cir. Ct. Fayette Cty.); ECF No. 29, Ex.

8. The Circuit Court habeas corpus petition raised the following

grounds for relief:

1.    Plain error in the lower court's failure/refusal to
      instruct the jury according to the only defense
      theory presented at trial and recognized by the
      court (public authority and entrapment).

2.    Ineffective assistance of counsel at a critical
      stage of the proceedings, when counsel failed to
      request an instruction according to the defense
      theory he himself established upon the record, a
      defense of public authority.

3.    Errant rulings of the lower court denying the right
      to a fair trial by jury by violating his rights to
      confront and cross-examine witnesses against him
      and to offer corroborating testimony in support of
      his defense theory before the jury (testimony in
      avowal of Michael Smith).

4.    Failure of the trial judge to recuse himself from
      presiding over this case, due to the presumed
      vindictiveness he is said to have as a result of
      his decision to seek and obtain harsher charges and
      convictions, after having obtained a conviction of
      the Petitioner to a lesser offense than those
      charged, when he was a prosecutor in 1994.

5.    Double jeopardy, because there must be a conspiracy
      in order to commit the offense (accessory before
      the fact in delivery of a controlled substance) and
      is included in the offense, and for those reasons
      stated upon appeal by appellate counsel.

6.    Disproportionate sentence to the nature and
      character of the offense, a single phone call to
      receive three to twenty years of confinement is too
      harsh for the act.

7.    Petitioner claims all grounds of error listed in
      the case of Losh [v. McKenzie] checklist.

Id.   The Circuit Court petition was denied in a written opinion

3

addressing each of the grounds for relief on September 18, 2009.

ECF No. 29, Ex. 10.

On November 6, 2009, Petitioner filed a petition for appeal,

which the SCAWV refused.  <u>Gamble v. Waid</u>, No. 091658 (W. Va. May

21, 2010); ECF No. 29, Ex. 11.

## **ISSUES PRESENTED**

Petitioner filed the instant section 2254 petition on April

28, 2010.  Petitioner raises the following grounds for relief:

> Ground One:  Denied jury instruction on only defense
> presented.  One of either the burden shifting instruction
> upon defense of entrapment, public authority or by
> estoppel.
>
> Ground Two: Ineffective assistance of counsel at trial at
> critical stage of jury instructions and upon appeal from
> clear conflict of interest in counsel's refusals.
>
> Ground Three: Denied confrontation rights in being denied
> right to cross examine co-defendant's tape recorded
> statement admitted at trial over objection/was available.
>
> Ground Four: Denied a fair and impartial judicial body
> sought recusal, denied through a writ of prohibition in
> State Supreme Court.

ECF No. 1 at 5-10.  Petitioner also filed a type-written document

entitled "Writ of Habeas Corpus 28 U.S.C. § 2254." <u>Id.</u>, Attachment

1.  Within that document, Petitioner includes seven "assignments of

error."  They are as follows:

> A.   Did the Trial Court recognize a specific theory of
>      defense that was subject to the determination of
>      the jury in a proper jury instruction?  Denied
>      right to a fair trial by an impartial jury for the
>      "Plain Error" in the court's failure to ensure a
>      proper jury instruction according to the defense
>      presented.

4

B.   Is the formulation and presentation of the jury instructions at the conclusion of trial a critical stage in the proceedings warranting competent and effective assistance of counsel in ensuring that the defendant receives an appropriate instruction that reflects the defense theory presented? Denied effective assistance of counsel at the critical stage of the proceedings, giving rise to question the validity of the conviction.

C.   Does the Confrontation Clause of the United States Constitution allow trial by deposition, affidavit or tape recordings, when the declarant is available but not called?  Does the Confrontation Clause limit examination of witnesses on their credibility?  Does it prohibit eliciting relevant and material testimony that corroborates the defense and testimony of the accused?  Denied Confrontation Rights and a fair trial.

D.   Should a Trial Judge recuse himself if there is any question as to his ability to maintain a fair and impartial trial?  If there exists in evidence a history of what has been identified as vindictiveness in association with a defendant, does it require recusal?  Denied a fair and impartial judicial body.

E.   Does using the same elements in two convictions create two separate offenses?  Defense counsel has shown that all the same elements exist in both offenses causing a violation of double jeopardy principles.

F.   In recognition of all the evidence, including any possible criminal intent found, does the sentence of three to twenty years in prison seem disproportionate to the character and degree of the offense?  A single phone call to solicit information using the request of a drug addict (Former Tenant) which was then passed on to law enforcement as an aid to law enforcement of drug activity learned of.

G.   The evidence, if viewed in light of the defense, from the defense of entrapment and in favor of this defense, is there insufficient evidence to convict? The evidence, viewed in light of any Public

> Authority Defense, Entrapment by Estopple [sic Estoppel] or Entrapment, shows that the State failed to refute the testimony of the West Virginia State Trooper when he testified that the complainant called him on June 9, 2006 and informing him that he had been speaking with the subject for some time and that the subject was going to be used in further criminal investigations.

Id. at 4-6.

Respondent indicates that Petitioner raised an unexhausted claim regarding failure to preserve evidence. ECF No. 30, at 20. Such a claim is not listed in the Petition, either on the standard form for § 2254 motions, ECF No. 1, or in his "Writ of Habeas Corpus," ECF No. 1-1. The claim will be disregarded as unexhausted and utterly lacking in merit. The jury heard evidence that Petitioner had completed paperwork to be a confidential informant; the paperwork was shredded when TRIDENT determined that he was not qualified to be an informant.

Respondent filed an Answer (ECF No. 28) and a Motion for Summary Judgment (ECF No. 29), supported by exhibits and a memorandum (ECF No. 30). The Court provided Petitioner with a Roseboro[1] notice (ECF No. 32). Petitioner filed an Answer in Response (ECF No. 33) and a Supplemental Pleading in Response to the Motion for Summary Judgment (ECF No. 40). Respondent filed a Reply (ECF No. 42).

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts.  The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but

7

unreasonably applies that principle to the facts of the prisoner's case.  Id. at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings.  See, e.g., Blackledge v. Allison, 431 U.S. 63, 81 (1977); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991).  Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

## STATEMENT OF FACTS AND TRIAL TESTIMONY

The evidence presented to the jury was summarized by the attorneys in their opening statements:

> [Prosecuting Attorney Paul] Harris: This is a drug case, but this is a case where, several years ago, a group of law enforcement agencies from different counties got together and formed the TRIDENT Drug Task Force for the purpose of attacking the drug problem that was occurring in various areas of Fayette County and other parts of the State of West Virginia, and it was a joint effort.

You'll hear from officers who are now back with their – the Raleigh County Sheriff's Department.  Some people are still with the TRIDENT Drug Task Force.

A gentleman by the name of Arlie Wills came to them and said he would like to help them with some drug buys, told them that he could help them, that he could make a drug buy from a gentleman by the name of Dean Gamble, Sr.

* * *

On the 24th [of May], he made a telephone call to the defendant, Dean Gamble, Sr., and inquired of him if he could get some "powder," which was common parlance between the two of them for cocaine.

Mr. Gamble told him he didn't have any but he would see what he could do for him, to call him back.  Mr. Wills called him back a short time later, and he said that he had made some arrangements to get the cocaine for him, that he was going to pick him up.

Mr. Wills then left his home with Officer Dunn of the TRIDENT Task Force, who dropped him off near the area where he intended to meet Dean Gamble, Sr.  Well, when he got out and walked down to this area, Mr. Gamble wasn't there.

But there was a fellow that said, "Are you looking for Dean?" He said, "Yes." He said, "Well, he's already gone.  He got tired of waiting.  But we'll take care of you."  That was Mr. Ingram.  Mr. Ingram stood and talked for a minute.

There was a fellow who was sitting in the car, Mr. Owens.  Mr. Ingram says, "Well, go ahead and do it," and he walks away, and the transaction takes place between Mr. Owens and Mr. Wills.

Mr. Wills leaves, having paid $50.00 for this cocaine.  He goes up the street and is picked up by Officer Dunn, who takes the cocaine into his possession, puts it in an evidence bag that's sealed.

* * *

The State's case is based around the telephone calls, basically, the conversations between Mr. Wills and

9

the defendant.  This defendant made the arrangements for
him to buy the cocaine.  He wasn't present at the time
the sale took place, but he obviously, from the telephone
conversations that you will hear, was an accessory before
the fact.  That makes him guilty as a principal in the
second degree of the delivery of that cocaine.

It also makes him guilty of the conspiracy, because
he entered into that joint venture with, obviously, Mr.
Ingram and Mr. Owens.  Although there was no conversation
about Owens, it was about Ingram.  It only takes two
people for conspiracy, and that is this defendant and Mr.
Ingram, because he obviously, from the evidence you'll
hear, set this whole thing up.

(Tr. Trial, ECF No. 29, Ex. 14, at 34-39.)

[Defense attorney James] Adkins: The evidence in this
case will show that Arlie Wills did make a telephone call
to Dean Gamble.  The evidence will also show that there
was no – never any real meeting of the minds because Mr.
Gamble was on the way to pick up Mr. Wills at Mr. Wills'
residence.  In the meantime, Mr. Wills had wandered off
somewhere else and bought drugs.

The evidence will also [show] that, during this time
frame, there was an ongoing conversation between Mr.
Gamble and law enforcement officers about the possibility
of him providing information to law enforcement to aid in
drug investigations and, if the phone rang, it behooved
him – when somebody asked him about drugs, it behooved
him [not] to threaten to call the police on them or turn
them in or something else.

I mean, that's what the evidence will show.  I'll
ask you to return a not guilty verdict at the end of the
case.

Id. at 39-40.

Arlie Wills testified that he placed a recorded and monitored

telephone call to Petitioner on May 24, 2006, and asked Petitioner

if he could find some cocaine powder.  Id. at 44.  Petitioner

replied that he would have to make a few phone calls.  Id.  During

a second call with Wills, Petitioner agreed to meet him.  Id.  As Wills approached the meeting place, Wills was called by persons in a car who asked if Wills was "going to see Dean."  Id. at 48.[2] When Wills replied that he was, one of the men said, "I can take care of you here."  Id. at 49.  Wills purchased powder cocaine for $50.  Id. at 49-50.  After the purchase, Wills placed another call to Gamble and told Gamble that Wills had met Roger Ingram.  Id. at 53.  Wills stated that Gamble replied, "Well, I told him that you wanted it."  Id.

Sheriff's Deputy John Dunn testified that he supervised the purchase of cocaine by Wills from Ingram.  Id. at 62-70.  Sergeant Joynes stated that he handled the audio and video recording equipment which was placed on Wills.  Id. at 70-75.  Detective Booker testified regarding the chain of custody of evidence.  Id. at 75-88.  Deputy Feltner sponsored the exhibits of the various recordings.  Id. at 88-114.  Ronald Taylor, a forensic drug analyst, established that Wills bought cocaine from Ingram.  Id. at 115-125.  Whereupon, the State rested.  Id. at 125.

The defense called Trooper William Scott to the witness stand to establish a date, June 9, 2006, on which Deputy Feltner discussed with Scott whether Petitioner could work as an informant. Id. at 142-46.  Betty Sue Arcudia stated that sometime during the

---

[2] Wills testified that he later learned that the men were Roger Ingram and Ronnie Owens, Jr.

summer of 2006, she told Petitioner that Wills told Arcudia that he worked for TRIDENT.  Id. at 152-56.

Petitioner testified he met Arlie Wills and rented Wills a room in Petitioner's house until Wills "started bringing drugs into my household."  Id. at 157-58.  Petitioner stated that in late April to early May, 2006, he offered to Deputies Feltner and Dunn to serve as a confidential informant on drug activity in Fayette County.  Id. at 160-64.  With respect to the transaction involving Arlie Wills, Petitioner testified as follows:

> [Mr. Wills] called me three times, and each time that he called me he asked me to help him get cocaine. I blew him off.  I told him, "Yeah, well, I'll make a few calls, and I'll call you back."
>
> Well, that's – they don't have them recordings.  The last time he called, I told him, "Look, I'm going to have to check around.  I'll have to see."
>
> And knowing that Mike Clark had already been arrested, I called Mike Clark's number, which Roger Ingram answered.  Just trying to find out if they were selling for Mike Clark, I asked them if they were selling.  They said, "Yeah."
>
> Well, I told {Arlie Wills], because [Arlie Wills] was working for TRIDENT.  Tom and Betty [Arcudia] had done told me that he was working for TRIDENT.  So here I am in a situation. [Arlie Wills] was in trouble.  I was trying – I thought I was helping [Arlie Wills] get out of trouble.  He told me he had a bunch of bad checks and that you guys were holding bad checks over his head to work for them – to work for you guys.
>
> So I told him – I told [Arlie Wills] that they were selling it.  I meant – I meant to call and tell you Roger's name and Ronnie's name that night, but I didn't call for two days.  Two days after that, on the 26th, I told you their full names, and it should have been recorded on the phone.

* * *

[By Mr. Adkins:] Did you instruct [Roger Ingram or Ronnie Owens] to sell anything to Mr. Wills?

A    No, I didn't.

Q    Okay.  And then at a later telephone conversation that Mr. Wills was calling you the second time, the second recorded time, did you arrange to meet him somewhere?

A    Yes.  I didn't want him to buy any drugs because, while he stayed at my house, he was shooting it up intravenously.  Shooting cocaine will kill you, and I'm a compassionate person, I didn't want to see that man die.

Q    And at the time of the second phone call where you were – were you on your way to meet him?

A    I was on my way to try to stop him from buying anything.

Id. at 164-68.

* * *

Q    Did Mr. Owens or Mr. Ingram ever – did you ever handle any drugs or any money resulting from a drug buy between Mr. Owens and Ingram and Mr. Wills?

A    No.

Q    Did anybody ever promise you anything to arrange a drug buy between those individuals?

A    No.

Q    Did anybody ever pay you anything or trade you anything on account of a drug buy between those individuals?

A    No.

Id. at 169.

On cross-examination, Petitioner admitted that he talked to

13

Roger Ingram between Mr. Wills' first recorded call and second recorded call, and told Ingram that "the fat guy that lived up the street was looking to get some cocaine." <u>Id.</u> at 174-75. Petitioner further agreed that TRIDENT agents never asked him to make a recorded telephone call, never put a recording device on him, and never used him at all as an informant. <u>Id.</u> at 177-78.

Petitioner's fiancee, Dorothy Blankenship, testified that she was with Petitioner when he met with police officers about being an informant. <u>Id.</u> at 181-82. Whereupon the defendant rested. <u>Id.</u> at 185.

The trial court ruled that the testimony of one defense witness, Michael Smith, an employee at Rent-A-Center, was irrelevant. <u>Id.</u> at 146-51. The testimony was given as an avowal. <u>Id.</u> at 238-41.

In closing argument, Petitioner's attorney asserted that there was no meeting of the minds between Petitioner and Arlie Wills:

> We'd like to point first to the events of March [sic; May] 24th. On Ma[y] 24th, Mr. Wills called Dean Gamble, asked him if we could buy cocaine. Mr. Gamble admits he did make the call, just to see if there was some out there, was going to meet Mr. Wills at or near his residence. But in the meantime, Mr. Wills wanders out and buys drugs somewhere else.

> So when the State is asking you to find somebody guilty of a conspiracy, it's very difficult – it's hard to get to there from here. There's no meeting of the minds. Mr. Gamble says to Mr. Wills, "I'll meet you at your house." In the meantime, Mr. Wills is out at some other location buying cocaine.

* * *

14

I want to point to a milestone in this case. The State has characterized our defense as Mr. Gamble saying there never was an agreement to be an undercover agent or an informant. I have characterized it as there is an ongoing conversation. There's an ongoing conversation, or if he's not – the State said he got a definite answer. Mr. Gamble says he didn't get a definite answer. So let's go to the milestone.

On June 9th, Detective Feltner called Trooper Scott, June 9th, about two and a half weeks after May 24th, and says, "I am considering using Dean Gamble as a source in investigations." Two and a half weeks after. That points to an ongoing conversation.

* * *

The events of May 24, there was no participation by Mr. Dean Gamble in a drug transaction. He didn't touch drugs. He didn't touch money. He didn't receive any compensation. There was an ongoing conversation between him and law enforcement officers. The evidence – independent evidence of that, June 9th, Detective Feltner calls Trooper Scott and says, "I'm considering using him as a source."

So as to the conspiracy, there's no meeting of the minds because Mr. Wills went somewhere else and bought drugs. Mr. Gamble was talking about meeting him at his house.

The next reason to return a not guilty verdict is Mr. Gamble was providing that information. There's that ongoing conversation about providing information on drugs in Oak Hill. It behooved him not to alienate people when the phone rang, so he had the conversation. He couldn't make himself stick out like a sore thumb. It was still necessary to blend in.

And the third reason you should return a not guilty verdict, there was the ongoing conversation about providing information on drug traffic in Oak Hill as evidenced by the June 9th phone call to the state police barracks. And keeping in mind that ongoing conversation is there, it's just plain dirty pool to prosecute this man for making a telephone call from a confidential informant after a confidential informant that this officer is working with calls him. It goes down into

what we call a vicious cycle, an extremely vicious cycle.

And for all those reasons, we ask you when you go to your jury room to come up with a not guilty verdict today.  Thank you.

Id., at 227-31.

## ANALYSIS OF GROUNDS FOR RELIEF

### Ground one: Lack of instruction on entrapment.

Ground One:  Denied jury instruction on only defense presented.  One of either the burden shifting instruction upon defense of entrapment, public authority or by estoppel.  Defense attorney established on the record that an agreement was signed by and between Defendant and Dorothy Blankenship with the Trident Task Force officers. Detectives Feltner and Dunn at the Oak Hill Police Department on May 7, 2006 to provide information on drug activity that was known and to become known.  May 24, 2006, a former tenant wanted assistance in obtaining drugs.  [T]his provided defendant an opportunity to solicit any information regarding drug activity, a purchase of fifty dollars of cocaine was then attempted by the former tenant.  Detective Feltner calls Trooper Scott of the Oak Hill Detachment of the State Police on June 9, 2006 for a background check and learned of a pending warrant to be issued and informed him that he was going to use defendant in further criminal investigations. The Trooper testified that he understood that the defendant would not be used any more.

ECF No. 1, at 5.

The State habeas court ruled on this ground as follows:

9.  Further, the allegation that the Court erred in failing to instruct the jury about the "raised" defense theories of public authority or entrapment by estoppel is also without merit.

10.  "When the defendant invokes entrapment as a defense to the commission of a crime, the defendant has the burden of offering some competent evidence that the government induced the defendant into committing that crime.  Once the defendant has met this burden of offering some competent evidence of inducement, the

16

burden of proof then shifts to the prosecution to prove beyond a reasonable doubt that the defendant was otherwise predisposed to commit the offense." Syl. Pt. 4, State v. Houston, 197 W. Va. 215, 475 S.E.2d 307 (1996).

11. The Petitioner clearly failed to meet the burden of any competent evidence that would show that the government "induced the defendant into committing that crime." At no point did the burden shift to the prosecution to prove the defendant was otherwise predisposed to commit the offense. The Petitioner offered evidence of on-going discussions with law enforcement to act as an informant in their drug enforcement activities, which the State was entitled to and did rebut. The failure to instruct the jury as to "public authority" and "entrapment by estoppel" was not error, or if it was error, it was plain trial error that is certainly not cognizable for issuance of a writ of habeas corpus.

ECF No. 29, Ex. 9, at 14.

Respondent argues that the jury rejected Petitioner's testimony that he was working for TRIDENT when the cocaine sale took place, noting that Petitioner did not contact law enforcement concerning Wills' desire to purchase cocaine, that Detective Booker testified that he would never use Petitioner as a confidential informant, and, most importantly, defense counsel did not request such an instruction. Resp. Mem., ECF No. 30, at 13.

Petitioner responds that he was

denied a fair trial through the failure/refusal of the Court to provide a burden shifting instruction as well as any related instruction according to the evidence in defense, taking the case or question away from the province of the jury. Had the petitioner received a proper instruction, shifting the burden upon the state to disprove the defense asserted the evidence shows that the state failed to make its case against the petitioner or to refute the evidence presented.

17

Pet.'s Answer, ECF No. 33, at 13.  His Answer contains lengthy arguments concerning the evidence which he claims is proof that he had a good faith belief that he was acting as an informant for the TRIDENT Task Force.  Id. at 6-13.

Respondent's Reply repeats the evidence relating to the Petitioner's contacts with law enforcement, and asserts that this ground for relief is not cognizable in federal habeas corpus as he has failed to allege violation of a federal constitutional right. Resp. Reply, ECF No. 42, at 2-6.

Petitioner's first ground for relief is without merit because the theory of his defense was not entrapment.  His attorney presented three reasons for acquittal: there was no meeting of the minds between Petitioner and Arlie Wills; Petitioner did not want to alienate those involved in drugs; and Petitioner was having on-going conversations with law enforcement.  None of these reasons supports Petitioner's position that he was induced by law enforcement to engage in drug distribution activity.  Having presented no evidence that a law enforcement agent induced Petitioner to commit the crimes of conspiracy to distribute cocaine and of accessory before the fact of cocaine distribution, he was not entitled to an instruction on the law of entrapment.  The undersigned proposes that the presiding District Judge **FIND** that the state habeas court's decision denying Petitioner habeas corpus relief on the basis of the failure to instruct the jury on the

defense of entrapment was neither contrary to, nor an unreasonable application of, clearly-established Federal law, and that Respondent is entitled to judgment as a matter of law on the first ground for relief in Petitioner's section 2254 petition.

**Ground two: Ineffective assistance of counsel**

> Ground two: Ineffective assistance of counsel at trial at critical stage of jury instructions and upon appeal from clear conflict of interest in counsel's refusals. Defense counsel established a defense position that he failed to seek an instruction for. He failed to seek or request a burden shifting instruction on the defense made. Appellate counsel refused to assign as error the court's failure to ensure a proper jury instruction according to the only defense presented, entrapment. Entrapment by estoppel or that of public authority. Appellate counsel also refused to assign error on ineffective assistance of counsel.

Pet., ECF No. 1, at 6-7.

The state habeas court applied the standard of review set forth in Strickland v. Washington, 466 U.S. 668 (1984), and ruled as follows:

> 6.    The Court concludes that the aforementioned allegation raised by the Petitioner, as summarized in paragraph 42b. herein, the failure of trial counsel to present "public authority" and/or "entrapment" as a defense is, at best, an allegation of ineffective counsel.

> 7.    The Court, applying the aforementioned clear and settled law to the facts herein found, concludes that the allegation of ineffective assistance of counsel, raised by Petitioner herein, generally questions or challenges a strategic, tactical trial decision made by an experienced trial lawyer during the underlying criminal proceeding.

> 8.    The Court concludes that, given the facts and circumstances of the underlying criminal case, trial

> counsel made a multitude of strategic, tactical decisions
> throughout the underlying criminal proceeding which were
> reasonable and certainly in no wise deficient.   Trial
> counsel was diligent and professional in his preparation
> and defense of the Petitioner.   He filed numerous motions
> in  the  course  of  his  defense  of  the  Petitioner.
> Petitioner's counsel thoroughly and carefully cross-
> examined the State's witnesses, was diligent in raising
> evidentiary  objections,  and  was  thorough  in  his
> presentation  of  the  Petitioner's  defense.   Thus,  the
> Petitioner's  trial  counsel,  notwithstanding  the  guilty
> verdicts  and  resultant  sentences,  was  very  effective
> trial  counsel.   Given  the  facts  of  the  case,  and  the
> State's  substantial  and  convincing  evidence,  trial
> counsel's  conduct  clearly  did  not  fall  below  any
> objective standard of reasonableness for criminal defense
> attorneys and the Petitioner's allegations of ineffective
> assistance  of  counsel  are  wholly  without  substance  or
> merit.

ECF No. 29, Ex. 9, at 13-14.

Respondent notes that "[d]efense counsel is not obligated to raise frivolous defenses in order to satisfy either prong of the Strickland test."   ECF No. 30, at 16.   Because "the Petitioner utterly failed to prove inducement or lack of predisposition, . . . he was not entitled to a jury instruction on entrapment."   Id. "[R]easonable defense counsel could have believed that any request for an entrapment instruction would have been denied."   Id. at 17.

Petitioner concedes that his attorney "was not completely ineffective" but claims that Mr. Adkins "dropped the ball at the last  crucial  moment,  failing  to  seek  or  request  a  proper instruction according to the defense he presented."   ECF No. 33, at 14.   He asserts that his attorney should have presented an instruction reading as follows:

> Where a person has no previous intent or purpose to
> violate the law, but is induced or persuaded by law
> enforcement officers or their agents to commit a crime,
> he is a victim of entrapment, and the law as a matter of
> policy, forbids his conviction in such a case.

Id. at 15.

The mere fact that law enforcement officers used a confidential informant to ask Petitioner for assistance in finding cocaine does not mean that Petitioner was entrapped.  The evidence presented at trial showed that Petitioner readily agreed to assist Arlie Wills in finding a source for cocaine, and promptly made contact with Ingram and Owens, who sold the cocaine to Wills.  If Petitioner's theory were true, virtually every controlled substance purchase by law enforcement would be subject to a defense of entrapment.  Mr. Adkins was not ineffective in his representation of Petitioner when he failed to request that the jury be charged on the defense of entrapment, as to which there was no evidence.  Moreover, Petitioner's appellate counsel was not ineffective when he did not assign as error either the lack of a jury instruction on entrapment, or counsel's failure to request such an instruction.

The undersigned proposes that the presiding District Judge **FIND** that the state habeas court's decision denying Petitioner habeas corpus relief on the basis of (1) his attorney's failure to request a jury instruction on the defense of entrapment or (2) his appellate counsel's failure to assign the issue as error, was neither contrary to, nor an unreasonable application of, clearly-

established Federal law, and that Respondent is entitled to judgment as a matter of law on the second ground for relief in Petitioner's section 2254 petition.

**Ground three: Confrontation of witnesses**

> Ground three: Denied confrontation rights in being denied right to cross-examine co-defendant's tape recorded statement admitted at trial over objection/was available. Co-defendant's recorded statement asking the question, are you looking for Dean was entered into evidence above objection because the declarant was available to testify and not called.

ECF No. 1, at 8.

The state habeas court considered this ground for relief and ruled as follows:

> 14.   The Court concludes that the Petitioner's right to confront and cross-examine witnesses was not violated in the underlying criminal case, in that the statements of co-defendants which were presented to the jury were res gestae statements made in furtherance of the conspiracy, sufficient independent evidence of a conspiracy was presented in the State's case in chief (and supported by the testimony of the Petitioner himself), and also, the law enforcement officers involved in producing the recordings, and the confidential informant who was "wired" for the recording of said statements, were all available and presented for cross-examination at trial. State v. Nixon, 178 W. Va. 338, 359 S.E.2d 566 (1987).

ECF No. 29, Ex. 9, at 15.

Roger Ingram and Ronnie Owens did not testify at Petitioner's trial. According to a footnote in Respondent's Memorandum, one of them had fled the jurisdiction and the other was facing the same charges in a pending case. ECF No. 30, at 17 n.7. Over defense counsel's objection, the recording made when Arlie Wills purchased

cocaine from Ingram and Owens (State Exhibit No. 5) was admitted.
Tr. Trans. ECF No. 29, Ex. 14, at 95-99. Mr. Adkins' objection was
as follows:

> MR. ADKINS: Your Honor, I believe that recording
> contains statement of non-testifying co-defendants which
> would tend to implicate Mr. Gamble. Those co-defendants
> are not here for me to cross-examine. Therefore, those
> statements should be deleted from the recording and
> redacted in such manner where they don't just fill in the
> blank and insert "Dean Gamble" in the situation.
>
> So I object based upon the fact it contains
> statements of co-defendants, which is the secondary
> issue, they're not here for me to cross-examine.

Id. at 96-97. The trial court overruled the objection. Id. at 98.

The undersigned does not have access to the State Exhibits and
transcripts of the recordings; however, Arlie Wills testified as to
the critical statement attributed to Ingram/Owens, which was "Are
you going to see Dean?" Id. at 48-49. The defense objected. Id.
at 49. The trial court admitted the statement as being res gestae.
Id.

The Supreme Court held, in Crawford v. Washington, 541 U.S.
36, 53-54 (2004), that the Confrontation Clause bars the "admission
of testimonial statements of a witness who did not appear at trial
unless he was unavailable to testify, and the defendant had a prior
opportunity for cross-examination." To determine whether a
statement is testimonial, one must ask whether the declarant
"intend[ed] to bear testimony against the accused." United States
v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004). That is, "whether a

reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." Id.

The Fourth Circuit has ruled that statements of a co-conspirator during the course of and in furtherance of the conspiracy are not testimonial statements under Crawford.

> Campbell first challenges the introduction of testimony by various government witnesses with respect to Campbell's involvement in the drug conspiracy. These statements, Campbell argues, are testimonial in nature and thus barred by *Crawford.* The statements objected to were largely observations about the involvement of various other members of the conspiracy in the sale of drugs, such as repeating that other conspirators told the witness that they had purchased drugs from Campbell. While such statements may well have been admissible evidence as statements by a co-conspirator during the course of and in furtherance of the conspiracy, see Fed.R.Evid. 801(d)(2)(E), they are not testimonial statements under *Crawford.* "... [N]ot testimonial-for example, [are] ... statements in furtherance of a conspiracy." *Crawford,* 541 U.S. at 56, 124 S.Ct. 1354. Not being testimonial statements, that evidence against Campbell was admissible, and we so hold.

United States v. Sullivan, 455 F.3d 248, 258 (4th Cir. 2006).

Several circuit courts of appeals have similarly ruled that out-of-court statements by co-defendants or co-conspirators, unwittingly made to a confidential informant and recorded by the government, are not "testimonial" for the purposes of the Confrontation Clause and Crawford. See, e.g., United States v. Mooneyham, 473 F.3d 280, 286-87 (6th Cir. 2007); United States v. Watson, 525 F.3d 583, 589 (7th Cir. 2008); United States v. Hendricks, 395 F.3d 173, 182 n.9, 184 (3d Cir. 2005); United States

v. Saget, 377 F.3d 223, 229 (2d Cir. 2004).

The undersigned proposes that the presiding District Judge **FIND** that the state habeas court's decision denying Petitioner habeas corpus relief on the basis of an alleged Crawford violation was neither contrary to, nor an unreasonable application of, clearly-established Federal law, and that Respondent is entitled to judgment as a matter of law on the third ground for relief in Petitioner's section 2254 petition.

**Ground four: Refusal of trial judge to recuse**

> Ground four: Denied a fair and impartial judicial body sought recusal, denied. Through a writ of prohibition in State Supreme Court. The Judge was a former prosecutor in cases against defendant and in one such case he elected to seek more severe charges after having obtained a conviction for lesser charges. This conduct was vindictive and the record is wrought with prejudicial remarks throughout the trial. Errant rulings in being denied the right to effective cross-examination of witnesses. Denied right to present defense witness testimony in support of defense before the jury, taken in avowal.

ECF No. 1, at 9-10.

The state habeas corpus court ruled as follows:

> 12. Further, the Petitioner has failed to raise a cognizable issue in his allegation that the presiding judge in the underlying criminal action should have recused himself sua sponte, or that a motion of recusal should have been pursued by trial counsel. The Petitioner has failed to allege with any particularity any improper act or omission by the Court which demonstrated bias, prejudice or a "vindictive" agenda on the part of the Trial Judge.

ECF No. 29, at 14-15.

The facts relating to this issue arose in a prior prosecution

of Petitioner.  They were described by the Supreme Court of Appeals
as follows:

> An investigation was conducted which suggested that the
> defendant, who was anxious that his son become sexually
> active early [the son was nine years old] or "be a man,"
> had encouraged his ([Petitioner's]) adult girlfriend to
> engage in sexual activity with the son, over the son's
> protests, in November, 1992.  The evidence also suggested
> that while this was occurring, the defendant stood by and
> took photographs.

State v. D.E.G.,Sr., 460 S.E.2d 657, 658 (W. Va. 1995).  The
prosecuting attorney of Fayette County, Paul M. Blake, Jr.,
prosecuted Petitioner on charges of "aiding and abetting first
degree sexual abuse" and "sexual abuse by a parent, guardian or
custodian."  On August 6, 1993, pursuant to a plea agreement,
Petitioner pled guilty to aiding and abetting first degree sexual
abuse in return for the State dismissing the charge of sexual abuse
by a parent, etc.  Id. at 659.  Five weeks later, prior to
sentencing, "at the prosecuting attorney's instigation," the grand
jury returned another two-count indictment against Petitioner, and
charged him with engaging in "first degree sexual assault" and "use
of minors in filming sexually explicit conduct."  Id.  The second
indictment arose out of the same events described above.  Id.
Petitioner went to trial on the second indictment and was convicted
on both charges.  Id. at 660.  The State filed a recidivist
information based on Petitioner's convictions in Illinois in 1976;
Petitioner went to trial and was found to be the same person who
had been convicted of the felonies in Illinois.  Id.  The SCAWV

reversed the convictions on the charges in the second indictment based on the "mandatory joinder rule," and affirmed the conviction on the first indictment.  <u>Id.</u> at 662-3.

Paul M. Blake, Jr. became a Circuit Court judge for Fayette County and presided over Petitioner's trial in the instant case, which took place on April 5, 2007.  ECF No. 29, Ex. 14, at 1.  On May 7, 2007, Judge Blake also presided over Petitioner's guilty plea to being a recidivist, with the 1993 charge of aiding and abetting first degree sexual abuse as the prior felony.  <u>State v. Gamble</u>, No. 07-F-46 (Cir. Ct. Fayette Cty, May 2, 2007); ECF No. 29, Exs. 2 and 3.

Before, during and after the trial of the instant case, Petitioner's attorney did not move to recuse Judge Blake.  On April 20, 2007, Petitioner filed a *pro se* "Petition for a Writ of Prohibition" in the SCAWV, seeking various forms of relief, including new counsel and recusal of Judge Blake.  ECF No. 29, Ex. 9, at 8.  The SCAWV refused the petition on May 22, 2007.  <u>Id.</u>

On May 24, 2007, Judge Blake sentenced Petitioner to serve an indeterminate period of not less than one year nor more than five years on the conspiracy charge, and an indeterminate period of not less than two years nor more than fifteen years on the delivery charge, with the sentences to run consecutively.  ECF No. 29, Ex. 5, at 2.  The sentencing hearing transcript is found at ECF No. 29, Ex. 16.  During the course of the sentencing hearing, Judge Blake

commented that Petitioner's "criminal history is one of the more extensive of defendants coming through this court." Id. at 13. "You've been in constant trouble with the law since you turned 18." Id. at 18.

The respondent asserts that the petitioner presents no evidence suggesting bias or vindictiveness on the part of Circuit Judge Paul Blake.  ECF No. 30, at 20.

In the exhibits attached to his petition (ECF No. 1-2, at 24-27), and in his response (ECF No. 33, at 19-21), Petitioner argues that Judge Blake demonstrated vindictiveness in 1993-94 when he prosecuted Petitioner for the offense of aiding and abetting first degree sexual abuse, which was used in 2007 to establish that Petitioner is a recidivist.  He claims that Judge Blake remained vindictive and chose to remain on this case to insure Petitioner's conviction.  Id.  Petitioner asserts that Judge Blake's bias and vindictiveness were demonstrated by "errant rulings denying defense counsel from cross examination of any witness, refusal to allow witness [Michael Smith] to testify before the jury, and the many personal remarks and comments made to your petitioner's prejudice." (ECF No. 1-2, at 25; ECF No. 33, at 20.)  He complains that an entrapment instruction was not given.  (ECF No. 1-2, at 25-26.) Finally, Petitioner argues: "The prejudicial remarks in pretrial restricting and directing counsel to make his case at the local pub over a glass of beer and not waste the court's time questioning

28

witnesses in court is clearly prejudicial." Id. at 26.  The
undersigned assumes that the petitioner bases this ground for
relief on the right to due process and a fair trial.

Taking the last accusation first, during the hearing on
pretrial motions on March 27, 2007, Judge Blake expressed
skepticism about Petitioner's defense that he was having ongoing
discussions with TRIDENT to serve as a confidential informant.

> THE COURT: Mr. Adkins, I've listened to this, and
> I'm trying to form in my own mind how any of this
> exculpates your client from any of the three charges set
> out in this particular indictment.[3]
>
> Whether or not he worked as a confidential informant
> or didn't work as a confidential information – that might
> go to some points in his favor when it – if he was
> convicted at some point in the future, to mediate in his
> best interest.
>
> But how does this exculpate him from the charges set
> out in this indictment?  I don't understand what – I
> don't understand where you're getting to.  You know, we
> could be here all day, you going through the policies of
> TRIDENT over there on confidential informants.  I'm
> trying to see the relevancy of it, and maybe you can
> enlighten me.
>
> * * *
>
> THE COURT:  Yeah, but this man never worked as a
> confidential informant.  I mean, there was certain
> paperwork that was filled out.  He didn't quality or
> whatever, the officer said, and his paperwork was
> shredded.  This man never entered into the conduct of
> being a confidential informant.  So that's where I am
> losing this.

---

[3]  Two charges were brought in the case at issue, No. 07-F-10;
a third charge was made in No. 07-F-9, which is not before the
court.

[Assistant Prosecuting Attorney] MR. ENGLAND: Your Honor, if I may also add, this is a motion for production of exculpatory evidence.  And I would just inform the Court that the defense has everything that the State has in this matter.

I think that what the defense counsel is concentrating on is this agreement, but that agreement has been shredded.  They have everything we have.  And I don't know what other points the defense was trying to make here, but they have all we have.

THE COURT: Well, I'm of a mind to just nip this right where it's at, unless you can convince me otherwise.  But I just think, you know, this is all good information that may be relevant over a glass of beer at the local pub or whatever, but I don't see where it's relevant in the trial of this man on these three charges set out in this indictment.

The fact that he signed some paperwork to work for TRIDENT but he never worked for TRIDENT and his paperwork was shredded, I don't see how that's relevant and material.

ECF No. 29, Ex. 15, at 14-16.

The undersigned has thoroughly reviewed the transcript of Petitioner's trial and finds no support for his accusations of unfairness by Judge Blake.  The lack of a jury instruction on entrapment has been considered with respect to Petitioner's first ground for relief.  Petitioner presented his defense through his own testimony and that of other witnesses.  His attorney cross-examined virtually every witness who testified, without objection by the State or interruption from the bench.  The avowal of Michael Smith's testimony established at most a prior statement by Petitioner to Smith that Gamble was working with TRIDENT, which is inconsistent with Gamble's testimony that TRIDENT "never used [him]

at all for [buying drugs for them]."  ECF No. 29, Ex. 14, at 178.
Judge Blake did not interfere with the questioning of witnesses or
express his opinion of the defense to the jury.  The undersigned
proposes that the presiding District Judge **FIND** that Judge Blake
did not display or express any bias against Petitioner during his
trial.   The  negative  comments  which  Judge  Blake  made  at
Petitioner's  sentencing  were  amply  supported  by  Petitioner's
lengthy  prior  criminal  record;  the  reasons  for  the  sentences
imposed were explained in considerable detail.

Petitioner suggests that Judge Blake should have recused
himself, citing 28 U.S.C. § 455.  That statute is inapposite, as it
applies to federal judicial officers, not state judges.  The State
of West Virginia has a Code of Judicial Conduct for its judicial
officers, which addresses disqualification in language which is
very similar to Section 455:

> **Canon 3.  A judge shall perform the duties of judicial
> office impartially and diligently.**
>
> * * *
>
> E.  Disqualification.   (1) A judge shall disqualify
> himself or herself in a proceeding in which the judge's
> impartiality might reasonably be questioned, including
> but not limited to instances where:
> (a) the judge has a personal bias or prejudice concerning
> a party or a party's lawyer, or personal knowledge of
> disputed evidentiary facts concerning the proceeding;
> (b) the  judge  served  as  a  lawyer  in  the  matter  in
> controversy, . . ..

The  undersigned  will  assume,  without  deciding,  that  Judge
Blake's prosecution of Petitioner in 1993-94, which resulted in the

conviction which was used in Petitioner's 2007 recidivist proceeding, could have been cause for Judge Blake to disqualify himself.  Even so, at least four circuit courts of appeals have ruled that the Supreme Court of the United States has not held in its decisions, not even in *dicta*, that the mere appearance of bias on the part of a state trial judge, without more, violates the Due Process Clause.  Johnson v. Carroll, 369 F.3d 253, 263 (3d Cir. 2004); Richardson v. Quarterman, 537 F.3d 466, 473-78 (5th Cir. 2008); Railey v. Webb, 540 F.3d 393, 399-415 (6th Cir. 2008); Davis v. Jones, 506 F.3d 1325, 1331-37 (11th Cir. 2007).  A Fourth Circuit decision on the issue has not been located.  Thus there is no "clearly established Federal law, as determined by the Supreme Court of the United States" which supports Petitioner's theory.

Based on the foregoing, the undersigned proposes that the presiding District Judge **FIND** that the state habeas court's decision denying Petitioner habeas corpus relief on the basis of Judge Blake's failure to recuse himself was neither contrary to, nor an unreasonable application of, clearly-established Federal law, and that Respondent is entitled to judgment as a matter of law on the fourth ground for relief in Petitioner's section 2254 petition.

**Ground five: Double jeopardy**

> Ground five: Does using the same elements in two convictions create two separate offenses?  Defense counsel has shown that all the same elements exist in both offenses causing a violation of double jeopardy

32

principles.

ECF No. 1-1, at 5.

The state habeas corpus court addressed this ground for relief as follows:

15.  The Petitioner's claim that his right against double jeopardy was violated is wholly without merit.

16.  "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused.  It protects against a second prosecution for the same offense after conviction.  It also prohibits multiple punishments for the same offense."  Syl. Pt. 6, Damron v. Haynes, citing Syl. Pt. 1, Conner v. Griffith, 160 W. Va. 680, 238 S.E.2d 529 (1977).

17.  "A claim that double jeopardy has been violated based on multiple punishments after a single trial is resolved by determining the legislative intent as to punishment."  Syl. Pt. 7, Id., Syl. Pt. 7, State v. Gill, 187 W. Va. 136, 416 S.E.2d 253 (1992).

18.  "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  Syl. Pt. 9, Id.  Citations omitted.

19.  The crimes for which the Petitioner was indicted, Conspiracy to Commit a Felony and Delivery of a Controlled Substance, are found in separate and distinct chapters of the West Virginia Code.  The intent of the legislature, as to the Conspiracy statute, W. Va. Code § 61-10-31, is that "It shall not be a defense to any prosecution under this section thirty-one that the conduct charged or proven is also a crime under any other provision or provisions of this Code or the common law." Further, in comparing the two statutes, each "necessitates proof of an additional fact which the other does not."

20.  The elements contained in the jury instruction given

as to Count 1, Conspiracy, in the underlying criminal action was that "the State must overcome the presumption that the Defendant, Dean E. Gamble, Sr., is innocent, and prove to the satisfaction of the jury beyond a reasonable doubt that:

a.  The Defendant, Dean E. Gamble, Sr.,
b.  In Fayette County, West Virginia,
c.  On or about the 24th day of May, 2006,
d.  Intentionally entered an agreement and conspired with another person or persons, to-wit: Roger D. Ingram and/or Ronnie L. Owens, Jr.,
e.  For the purpose of Delivery of a Schedule II Narcotic Controlled Substance, a felony,
f.  And that Roger D. Ingram, a conspirator and/or Ronnie L. Owens, Jr., a conspirator, and/or the Defendant, Dean E. Gamble, Sr.,
g.  Subsequent to the agreement,
h.  Committed an overt act in furtherance of the conspiracy, which conspiracy had not terminated.

21.  The jury was further instructed by the Court that to convict the Petitioner of Count II, Delivery of a Controlled Substance," the State must overcome the presumption that the Defendant, Dean E. Gamble, Sr., is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that:

a.  The Defendant, Dean E. Gamble, Sr.,
b.  In Fayette County, West Virginia,
c.  On or about the 24th day of May, 2006,
d.  Did knowingly (counsel) (procure) (plan) (instigate) (command),
e.  Roger D. Ingram and/or Ronnie L. Owens, Jr.,
f.  To commit Delivery of a Schedule II Narcotic Controlled Substance, a felony,
g.  And that on the 24th day of May, 2006,
h.  In Fayette County, West Virginia,
i.  Roger D. Ingram and/or Ronnie L. Owens, Jr.,
j.  Did unlawfully and feloniously deliver a Schedule II Narcotic Controlled Substance,
k.  And that the Defendant, Dean E. Gamble, Sr., was not actually or constructively present at the time and place of the commission of the Delivery of a Schedule II Narcotic Controlled Substance."

22.  In consideration of the aforementioned jury instructions, and the Code sections identifying the elements and punishment for Conspiracy to commit a felony (W. Va. Code § 61-10-31) and Delivery of a Controlled

> Substance (W. Va. Code § 60A-4-401), it is quite apparent that each of these crimes are composed of distinct elements, one from the other, including as necessary for a conviction of Conspiracy, the requirement of an overt act in furtherance of the conspiracy, separate and distinct from the actual commission of the conspired object crime, and also, that actual delivery of a controlled substance is necessary for a conviction of Delivery of a Controlled Substance, even though the "accessory before the fact" was not present at the time of delivery.

ECF No. 29, Ex. 9, at 15-18.

The undersigned proposes that the presiding District Judge **FIND** that the state habeas court's decision denying Petitioner habeas corpus relief on the basis of an alleged violation of the Double Jeopardy Clause was neither contrary to, nor an unreasonable application of, clearly-established Federal law, and that Respondent is entitled to judgment as a matter of law on the fifth ground for relief in Petitioner's section 2254 petition. The state court's analysis is entirely consistent with the applicable clearly established Supreme Court precedent of Blockburger v. United States, 284 U.S. 299, 304 (1932).

**Ground six: Disproportionate sentence**

> Ground six: In recognition of all the evidence, including any possible criminal intent found, does the sentence of three to twenty years in prison seem disproportionate to the character and degree of the offense? A single phone call to solicit information using the request of a drug addict (Former Tenant) which was then passed on to law enforcement as an aid to law enforcement of drug activity learned of.

ECF No. 1-1, at 5.

The state habeas corpus court ruled as follow:

35

23. The Petitioner's raised ground of disproportionate sentence to the nature and character of the offense ("a single phone call to receive three to twenty years of confinement is too harsh for the act"), fails to identify a cognizable issue available for consideration in the evaluation of a Petition for Habeas Corpus.

24. "As a general proposition, we will not disturb a sentence following a criminal conviction if it falls within the range of what is permitted under the statute. In Syllabus Point 2 of <u>State v. Farmer</u>, 193 W. Va. 84, 454 S.E.2d 378 (1994), this Court stated: 'Sentences imposed by the trial court, if within statutory limits and if not based on some un-permissible factor, are not subject to appellate review.' Syl. pt. 4, <u>State v. Goodnight</u>, 169 W. Va. 366, 287 S.E.2d 504 (1982)." As presented in <u>State v. Stugg</u>, 193 W. Va. 388 at 406, 456 S.E.2d 469 at 487 (1995).

25. The Petitioner was sentenced in accord with the statutorily mandated sentences in W. Va. Code § 61-10-31, for an indeterminate period of not less than one (1) years nor more than five (5) years for the felony crime of conspiracy to commit a felony; and in accord with W. Va. Code § 60A-4-401, for an indeterminate period of not less than two (2) years nor more than fifteen (15) years for the felony crime of delivery of a Schedule II narcotic controlled substance, to-wit, cocaine, which included the doubling of the minimum sentence for said felony, as permitted by the W. Va. recidivist statute, § 61-11-18(a). Said sentences were ordered to be served consecutively. These sentences are clearly neither disproportionate nor illegal.

ECF NO. 29, Ex. 9, at 18-19.

Respondent contends that clearly established Supreme Court precedent holds that a sentence imposed within statutory limits is generally not subject to federal habeas corpus review, citing <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948).

Petitioner's response mostly consists of a description of his efforts at rehabilitation while in custody and a renewed attack on

the credibility of the testimony of Detective Feltner.

The undersigned proposes that the presiding District Judge **FIND** that the state habeas court's decision denying Petitioner habeas corpus relief on the basis of alleged disproportionality of his sentence was neither contrary to, nor an unreasonable application of, clearly-established Federal law, and that Respondent is entitled to judgment as a matter of law on the sixth ground for relief in Petitioner's section 2254 petition.   The state court's analysis is entirely consistent with the applicable clearly established Supreme Court precedent of <u>Townsend</u>.

**Ground seven: Sufficiency of the evidence**

> Ground seven: The evidence, if viewed in light of the defense, from the defense of entrapment and in favor of this defense, is there insufficient evidence to convict? The evidence, viewed in light of any Public Authority Defense, Entrapment by Estopple [sic] or Entrapment, shows that the State failed to refute the testimony of the West Virginia State Trooper when he testified that the complain[]ant called him on June 9, 2006 and informing him that he had been speaking with the subject for some time and that the subject was going to be used in further criminal investigations.

ECF No. 1-1, at 5-6.

The state habeas corpus court, while ruling on Petitioner's claim of ineffective assistance of counsel, commented that the State presented "substantial and convincing evidence." ECF No. 29, Ex. 9, at 14.  In conclusion, the court wrote, "in consideration of the totality of the facts and circumstances of this case, . . . Petitioner received that to which he was constitutionally entitled

– a fair trial by a jury of his peers." Id. at 19.

In reviewing the sufficiency of the evidence to support a State criminal conviction on a due process challenge in a federal habeas proceeding, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 (1979).

After a thorough review of the entire record, the undersigned proposes that the presiding District Judge **FIND** that the state habeas court's decision denying Petitioner habeas corpus relief on the basis of alleged insufficiency of the evidence was neither contrary to, nor an unreasonable application of, clearly-established Federal law, and that Respondent is entitled to judgment as a matter of law on the seventh ground for relief in Petitioner's section 2254 petition.

### RECOMMENDATION

It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the respondent's motion for summary judgment (ECF No. 29).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED,** and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner.

July 14, 2011
Date

Mary E. Stanley
United States Magistrate Judge

39